UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

HORACE W. CRUMP,

        Plaintiff,                    Case No. 1:11-cv-15

v.                                    Honorable Paul L. Maloney

UNKNOWN PATRICK et al.,

        Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.     Factual allegations

Plaintiff Horace W. Crump presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the G. Robert Cotton Correctional Facility (JCF), though the actions about which he complains occurred while he was housed at the Michigan Training Unit (MTU). Plaintiff sues the following MTU employees: Food Service Director (unknown) Patrick, and Food Service Supervisors (unknown) Black, (unknown) Diaz, and (unknown) Hansen.

Plaintiff alleges that he is a Muslim who does not eat pork for religious reasons. Under prison policy, prison menus are posted one week in advance, and prisoners are "permitted to abstain from foods that violate their religious tenets. Non-meat entrees shall be available." MICH. DEP'T OF CORR., Policy Directive 05.03.150, ¶ OO.

In his introductory allegations, Plaintiff states that MTU seeks to feed 1,500 prisoners as rapidly as possible. One server is responsible for serving the main course, whether the prisoner has chosen the standard entree or the substitute entree. He alleges that, given the rapidity of the food service, cross-contamination of the non-pork entree occurs because food-service employees don't change their sometimes-spattered gloves before picking up the serving spoon for the non-pork entry.

On May 9, 2010, pork was on the main menu. Plaintiff requested a substitution. After Plaintiff had eaten a substantial amount of the substitute entree, he found that a pork entree was underneath the non-pork substitution. He alleges that, because he has religiously abstained from pork for over 15 years, he became physically ill from eating the hidden pork. Plaintiff complained to Defendants Patrick, Black and Diaz, but they told him that they did not care and that he should grieve the problem.

On May 17, 2010, Plaintiff complained to Defendant Hansen that he had observed a food-service worker wear the same gloves to serve his non-pork selection as had been used by the worker to serve the standard entree. According to Plaintiff, the failure to change gloves allowed cross-contamination that prevented Plaintiff from observing his religious diet. Hansen did nothing except to tell Plaintiff, "[D]on't eat if you don't like it." (Compl. ¶ 8, Page ID#8.) Plaintiff wrote to Defendant Patrick to complain that he had not eaten because of the worker's failure to change his gloves. Patrick did not respond.

Plaintiff was called to health services on June 1, 2010. At his appointment, he complained of the effects of being served pork on May 9, 2010. Later that same day, Plaintiff was served a polish sausage for lunch that allegedly made him sick. The next day, other prisoners informed Plaintiff that the sausage had contained pork, though it had not been marked on the menu with a "p" to indicate that it contained pork. Plaintiff asked Food Service Supervisor (unknown) Cole whether it was true that the sausage had contained pork. Cole confirmed that the sausage was turkey, but that it was in a pork casing. Plaintiff spoke with Defendant Patrick about being served the sausage. Patrick confirmed that he had made a mistake in not marking the entree as containing pork. Patrick told Plaintiff that "a lil' pork won't hurt you," and suggested that Muslim prisoners were "just tryin' to start somethin'." Plaintiff submitted an issue to the Warden's forum regarding the serving of pork, but he was transferred before it was answered.

Plaintiff alleges that the two occasions on which he was served pork caused him to vomit and to experience mental and emotional injuries. He also alleges that he suffered hunger and further emotional injuries from Defendants' refusal to correct the cross-contaminated substitute

entree on May 17, 2010. In addition, he alleges that he had to endure 40 days of not having his prayers answered by Allah because he had eaten what was forbidden.

Plaintiff contends that Defendants' acts and omissions violated his right to freely practice his religion, substantially burdened his religious rights under the First and Fourteenth Amendments, denied him equal protection, violated the Religious Land Use & Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc, and constituted a variety of state torts. Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not

'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Free-Exercise Claim

Plaintiff claims that Defendants' negligent acts and failures to respond to his complaints burdened his religious rights under the First and Fourteenth Amendments. Plaintiff specifically alleges that he mistakenly was given pork on two isolated occasions and that he believed his non-pork entree was contaminated on a third occasion, causing him not to eat.

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," prisoners are entitled under the First and Fourteenth Amendments to a reasonable opportunity to exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348-49 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent*

*v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) ("sincerely held religious beliefs require accommodation by prison officials"). Prison officials may impinge on these constitutional rights only if the restriction "is reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

The reasonableness of a challenged regulation is determined under the deferential framework established in *Turner*, 482 U.S. 78, which recognizes the "'inordinately difficult undertaking'" of prison administration, which "'requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government.'" *Colvin*, 605 F.3d at 293 (quoting *Turner*, 492 U.S. at 85). *Turner* requires a court to consider four factors to determine reasonableness:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. If not, the regulation is unconstitutional, and the other factors do not matter. Unlike the first factor, the remaining factors are considerations that must be balanced together: (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimus cost to valid penological interests.

*Colvin v. Caruso*, 605 F.3d 282, 293-94 (6th Cir. 2010) (internal quotations omitted) (discussing *Turner*, 482 U.S. at 89-91). The *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90-91. Instead, the

issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

In the instant case, Plaintiff does not allege that Defendants had a policy of refusing to provide a pork-free diet or that they have intentionally interfered with his diet. Indeed, he expressly states that, pursuant to an MDOC policy directive, MTU officials posted the menus in advance, indicated if any food items contained pork, and served a substitute food item any time pork was served. *See* MICH. DEP'T OF CORR., Policy Directive 05.03.150, ¶ OO. Instead, he principally alleges that Defendants negligently supervised prisoner food-service employees, permitting his food to be contaminated with pork on two occasions, and that, on another occasion, Defendant Patrick negligently failed to indicate on the menu that a sausage contained pork products. Nevertheless, although Plaintiff does not directly articulate the claim, his complaint, construed liberally, impliedly claims that Defendants infringed his right to freely exercise his religion by permitting workers to serve pork and non-pork entrees without an intervening change in gloves.

Plaintiff's implied claim is without merit. First, it is questionable whether permitting workers to use contaminated gloves to hold a serving spoon actually infringes upon Plaintiff's right to a non-pork diet. Plaintiff does not allege that the policy permitted servers to touch the food or the bowl of the serving spoon with their gloves; he alleges only that food servers were permitted to touch the handles of both the pork and non-pork serving spoons. Under such a practice, absent negligence, contaminated gloves would not contaminate the non-pork food. As a consequence, it is questionable whether Plaintiff has demonstrated that, by permitting the practice, Defendants infringed upon his right to freely exercise his religion. *See Flagner*, 241 F.3d at 481 (reciting elements).

In addition, even assuming that the practice rises to the level of a constitutional infringement, Plaintiff's own background allegations clearly demonstrate that Defendants have a legitimate governmental interest in the practice. As Plaintiff specifically recognizes, Defendants have the responsibility of serving more than 1,500 prisoners within a short period of time, which requires that trays be moved very quickly down the line. Defendant's reliance on the current practice unquestionably is based on a legitimate penological interest. *Turner*, 482 U.S. at 90. Moreover, the remaining *Turner* factors do not weigh in favor of Plaintiff. Plaintiff makes no claim that his Muslim religion is not otherwise accommodated. Plaintiff routinely is given access to non-pork choices in his diet, and he does not complain that he is prevented from practicing the other tenets of his belief. He therefore has numerous alternatives for exercising his religious rights. *Id.* In contrast, accommodation of his request would have a significant impact on the scheduling and resources of the prison. Requiring a server to stop the line to change gloves each time a prisoner requests the substitute menu item unquestionably would significantly delay the prison's ability to serve meals within a reasonable time and would significantly increase the amount of time prisoners collectively are assembled and, consequently, the amount of staff time to supervise prisoners in the dining hall. *Id.* Finally, Plaintiff has not proposed any other ready alternative available that would fully accommodate the prisoner's rights at *de minimus* cost to valid penological interests. *Id.* at 90-91. In sum, Plaintiff fails to allege facts that would support a finding that Defendants' practice of allowing prison food servers to wear the same gloves while serving pork and non-pork dishes was not reasonably related to a legitimate penological interest.

Further, to the extent that Plaintiff alleges that Defendants inadequately supervised prisoner food-service employees, he fails to state a claim against them. Government officials may

not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff's claims of inadequate supervision therefore are insufficient to support liability.

Moreover, it is well established that allegations that a state official acted negligently will not state a constitutional claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986) (holding that the protections of the Due Process Clause of the Fourteenth Amendment are not "triggered by a lack of due care by prison officials.") (citing *Estelle v, Gamble*, 429 U.S. 97, 106 (1976) (holding that medical malpractice does not become an Eighth Amendment claim merely because the victim is a prisoner), and *Baker v. McCollum*, 443 U.S. 137, 146 (1979) (holding that false imprisonment does not violate the Fourteenth Amendment simply because the defendant is a state official)). Numerous courts, including the Sixth Circuit, have recognized that a prison official's negligence in complying with a prisoner's religious diet does not violate the constitution. *See Colvin v. Caruso*, 605 F.3d 282, 293-94 (6th Cir. 2010) (holding that negligence by prison officials in implementing kosher-food requirements is not actionable under the First Amendment); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (isolated acts of negligence in providing

kosher diet do not support a free-exercise claim); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir.2006) ( "[Plaintiff] must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983.") (citing *Daniels*, 474 U.S. at 330).

      For all these reasons, Plaintiff fails to state a free-exercise claim under § 1983.

## B.     RLUIPA

      Plaintiff next alleges that Defendants violated RLUIPA, 42 U.S.C. § 2000cc, when they failed to make food servers change gloves and when they negligently fed him pork-contaminated food items. The RLUIPA statute provides, in relevant part, that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). Plaintiff seeks compensatory and punitive damages and a declaratory judgment, but none of these forms of relief are available to him.

      Although the RLUIPA permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), the Sixth Circuit has held that monetary damages are not available under RLUIPA. *See Colvin*, 605 F.3d at 289 (citing *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Moreover, Plaintiff's request for declaratory relief is moot because Plaintiff has been transferred from MTU to JCF. Plaintiff specifically challenged only the food-service practices at MTU, not the policy of the MDOC as a whole. *See Colvin*, 605 F.3d at 289 (finding challenge to the kosher-meal program moot because the prisoner attacked only the policy at one prison, not the

overall MDOC kosher-meal policy) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir.1996)). Accordingly, Plaintiff's RLUIPA claim must be dismissed.

### C.      Equal-Protection Claim

In his prayer for relief, Plaintiff alleges that Defendants' acts and omissions violated his right to equal protection under the Fourteenth Amendment.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest."  *City of Cleburne*, 473 U.S. at 440.

Plaintiff's single allegation on this point is wholly conclusory.  He appears to claim that he is being treated differently than other prisoners because he is Muslim.  However, Plaintiff provides no specific factual allegations that would support his contention, and he has identified no similarly situated person who was treated differently.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 129 S. Ct. at 1949 (holding that a court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."); *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985).  Plaintiff therefore fails to state an equal-protection claim.

### D. State-Law Claims

To the extent that Plaintiff's complaint presents allegations that Defendants' actions violated state law or policy, this Court declines to exercise jurisdiction. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The Sixth Circuit has stated that, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and where all federal claims are dismissed prior to trial, the court ordinarily should dismiss the state-law claim without reaching its merits. *See Landefeld v. Marion Gen. Hosp.*, *Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)). This claim will be dismissed without prejudice.

### Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   February 18, 2011          /s/ Paul L. Maloney
                                    Paul L. Maloney
                                    Chief United States District Judge